UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DANIEL L. DRIGGERS,**

    **Plaintiff,**

v.                                Case No. 8:08-cv-1238-T-17

**CABLE TELEVISION
INTSALLATION & SERVICE,
INC.,**

    **Defendant.**
_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on Defendant's Motion for Summary Judgment filed April 8, 2009 (Doc. 18) and response thereto (Doc. 21). For reasons set forth below, Defendant's motion is denied.

BACKGROUND

On June 26, 2008, the plaintiff, Daniel L. Driggers, filed a Complaint and Demand for Jury Trial against the defendant, Cable Television Installation & Service, Inc., in the U. S. District Court for the Middle District of Florida. (Doc. 1). Plaintiff seeks relief under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as amended, ("FLSA") alleging entitlement to unpaid overtime compensation. Defendant answered with affirmative defenses on July 21, 2008

1

,and moved for summary judgment on April 8, 2009. (Docs. 5, 18). Defendant denies any wrongdoing and maintains that relief is inappropriate because Plaintiff qualifies under the administrative exemption to the wage and maximum hours requirements of the FLSA. 29 U.S.C. § 213(a)(1). Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgment on May 18, 2009. The parties dispute whether Plaintiff qualifies under the administrative exemption to the minimum wage and maximum hours requirements of the FLSA. The following facts are accepted as true only for the purposes of resolving the pending motion.

Plaintiff was employed by CTIS, a cable and internet installation services provider. He began his employment in dispatch and then became a cable installer ("Subcontractor") for two to three years. Subcontractors are independent contractors required to use their own equipment and tools in their installation work as well as provide their own insurance. In May 2005, Plaintiff began working as a Field Coordinator, later called a Field Advisor, and continued in this position until he was terminated in May 2008.

As Field Coordinator, Plaintiff was assigned a hub, which was a geographical area based on zip code. Each morning, he handed out work assignments to subcontractors in his hub, making the assignments based on the time of the scheduled work and, when the workload permitted, on subcontractor ability and experience. Plaintiff also reviewed and entered subcontractor paperwork, which included checking billing documents to assure they were filled out in compliance with the standards of CTIS and its customer Bright House. He adjusted

billing codes to comply with the job specifications and billing rules, often seeking guidance from Bright House.

Plaintiff was responsible for informing the subcontractors in his hub of changes to job specifications put out by Bright House and CTIS. He sometimes explained what the changes meant and suggested approaches to performing the job to the new specifications. If a subcontractor had a problem with an installation, Plaintiff would try to help the subcontractor figure out how to make the job comply with specifications, and if he could not, he would contact Bright House for further instructions. Plaintiff did not have the authority to deviate from job specifications without first consulting Bright House.

In the afternoons Plaintiff performed inspections. He had the authority to inspect installations of his choice to ensure compliance with job specifications. The number of these quality control inspections varied based upon Plaintiff's workload in the office and number of damage inspections assigned by Bright House. If his quality control inspection revealed deviations from specifications, Plaintiff would have the installation subcontractor fix the problem to meet job specifications or assign another subcontractor to do so. Occasionally Plaintiff performed the repair work himself. When customers had complaints about installations, they contacted Bright House or CTIS who in turn would contact Plaintiff, instructing him to inspect the damage. Plaintiff performed these inspections to determine if the subcontractor was responsible for the damage. If the subcontractor made a mistake that caused the damage, the subcontractor and his insurance were responsible. If the damage was caused by the

subcontractor following specifications, Plaintiff would contact CTIS for approval of a repair or assign another subcontractor to handle the issue. If the subcontractor was not responsible for the damage, Plaintiff would not offer repairs and the customer would have to contact CTIS to take the claim further.

STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). All facts and inferences are to be viewed in the light most favorable to the non-moving party. *Id.* at 255. There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, if a reasonable fact-finder could draw an inference from the facts that introduces a genuine issue of material fact, summary judgment should not be granted. *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988).

DISCUSSION

An employer must compensate an employee who exceeds the maximum hours requirements of 29 U.S.C. § 207 unless it can show an FLSA exemption applies under section 213(a)(1). These exemptions are narrowly construed against the employer. *Wouters v. Martin County, Fla.*, 9 F.3d 924, 929 (11th Cir. 1993). The FLSA provides an exemption to its provisions for "any employee employed in a bona fide executive, administrative, or professional capacity . . . as such terms are defined and delimited from time to time by the regulation of the Secretary . . . " 29 U.S.C. § 213(a)(1); *Auer v. Robbins*, 519 U.S. 452, 456 (1997). The regulations state:

> The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:
> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).

In their filings, both parties state that Plaintiff satisfies the first and second prongs of the administrative exemption. Defendant has described Plaintiff's primary duty as quality assurance, including assigning work orders, communicating changes in job specifications, checking subcontractor paperwork for compliance with policy, and ensuring subcontractor installations met specifications and quality standards. For the purposes of summary judgment, Plaintiff has agreed to this description and its satisfying the second prong. Plaintiff challenges only the use of

5

discretion and independent judgment with respect to matters of significance in the performance of Plaintiff's primary duty as required in the third prong.

The regulations governing the FLSA describe the use of discretion and independent judgment as generally involving "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. 541.202(a). As used in that section, matters of significance are determined by the import and consequence of the work. *Id.* The regulations provide a non-exhaustive list of considerations to weigh in determining whether the third prong of the administrative exemption applies[1]. An exempt employee also must have the authority to make "independent choice[s], free from immediate direction or supervision . . . even if their decisions or recommendations are reviewed at a higher level." 29 C.F.R. § 541.202(c). Further, the use of discretion and independent judgment may not merely be "the use of skill in applying well-established techniques, procedures, or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e).

---

[1] In relevant part, 29 C.F.R. 541.202(b) provides "[f]actors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: [1] whether the employee has authority to formulate, affect, interpret, or implement management policies or or operating practices; [2] whether the employee carries out major assignments in conducting the operation of the business; [3] whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to the operation of a particular segment of the business; [4] whether the employee has the authority to commit the employer in matters that have a significant financial impact; [5] whether the employee has the authority to waive or deviate from established policies and procedures without prior approval; [6] whether the employee has authority to negotiate and bind the company on significant matters; [7] whether the employee provides consultation or expert advice to management; [8] whether the employee is involved in planning long- or short-term business objectives; [9] whether the employee investigates and resolves matters of significance on behalf of management; and [10] whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances."

Defendant contends that Plaintiff has clearly met four of the ten factors (1, 2, 9, and 10) and that this is enough to satisfy this prong. The allegations are that Plaintiff had the authority to interpret and implement management policies and operating practices, that Plaintiff's work affected his employer's business operations to a substantial degree, that Plaintiff investigated and resolved matters of significance on behalf of management, and that Plaintiff represented the company in handling complaints and resolving grievances. Defendant supports the idea that meeting four factors is sufficient to establish exercise of discretion and independent judgment by quoting *Villegas v. Dependable Construction Servs., Inc.*, No. 4:07-cv-2165, 2008 U.S. Dist. LEXIS 98801, at *26 (S.D. Tex. Dec. 8, 2008) ("Federal courts generally find that employees who meet at least two or three of these factors are exercising discretion and independent judgment…"). However, the *Villegas* court purports to describe only the federal courts in the Fifth Circuit and finishes the quotation by noting a requisite "case-by-case analysis." *Id.*

As the considerations in § 541.202(b) are suggestions, a jury may find that an employee has met any number of them and still find that the employee did not exercise discretion and independent judgment based on other considerations. For example, while an employee may make certain decisions independent of direct supervision, the employee will not qualify under the third prong if those decisions are made through the use of skill and experience in the industry. *Gottlieb v. Constr. Servs. Consultants, Inc.*, No. 05-14139-CIV-GRAHAM, 2006 U.S. Dist. LEXIS 97446, at *19-20 (S.D. Fla. July 20, 2006) (finding that an employee who scheduled supply orders, government inspections, and subcontractor work assignments did not exercise

7

discretion and independent judgment because he made the decisions based on skill and experience in the industry) . The specific facts of the case must be addressed.

Defendant first claims that Plaintiff exercised discretion and independent judgment on matters of significance because he had authority to interpret and implement quality standards, directives, and operating practices. Plaintiff was responsible for communicating policies, standards, and changes in specifications to the subcontractors in his area. In communicating these, he often explained what the policies or changes meant and made suggestions about how a subcontractor could perform his work to meet the specifications. A jury could reasonably find that in doing so, Plaintiff was not using discretion and independent judgment to interpret or implement the specifications because he was simply repeating policies and specifications established by Bright House and CTIS. The jury could conclude that the advice given to the contractors was simply the use of Plaintiff's experience and skill in the field to comply with the requirements provided, or that Plaintiff had no authority to tell the independent contractors how to perform their work.

Defendant argues next that Plaintiff exercised discretion and independent judgment on matters of significance because his review of billing paperwork, his quality control work, and his scheduling and supervising contractors affected CTIS business operations to a substantial degree. Plaintiff reviewed subcontractor paperwork for compliance with billing rules set by Bright House. Billing is certainly significant to a business; however, Plaintiff did not exercise discretion or independent judgment in the correction of billing codes. The potential of an

8

employee's primary duty to affect the finances does not prove the use of discretion and independent judgment. *Id.* While Plaintiff had considerable skill in recognizing and correcting violations of Bright House billing rules on subcontractor paperwork, he often checked with other CTIS and Bright House employees to ensure that the billing paperwork was properly conforming to Bright House's expectations.

Likewise, the potential of Plaintiff's quality control inspections and his efficient scheduling of contractors to affect the finances of CTIS does not preclude a jury's finding that Plaintiff's primary duties were not exercises of discretion and independent judgment. First, though Plaintiff was responsible for assigning work to contractors without guidance or supervision, a jury could determine this to also be a use of skill and experience in the industry. *Id.* Second, the regulations exclude "ordinary inspection work" as qualifying under the administrative exemption because it is normally "specialized work along standardized lines involving well-established techniques and procedures which may have been catalogued and described in manuals or other sources. Such inspectors rely on techniques and skills acquired by special training or experience. They have some leeway in the performance of their work but only within closely prescribed limits." 29 C.F.R. § 541.203(g). Plaintiff's inspection work was just that; his inspections compared the installations to established policies and specifications, and he had no authority to deviate from Bright House specifications or policies in his resolution of customer complaints.

This relates to Defendant's third and fourth claims, that Plaintiff exercised discretion and

9

independent judgment in investigating and resolving matters of significance on behalf of management and as their representative in dealing with grievances.  Again, Plaintiff had no authority to deviate from policy or specifications in his resolution of customer complaints and performed ordinary inspection work.  The customer complaints would go through Bright House and CTIS, and Plaintiff would be told what to inspect.  Plaintiff did have the authority to determine if customer damage claims were likely to succeed and deny their claims, though this denial was appealable to CTIS.  A jury could reasonably find Plaintiff's resolution of complaints was within the closely prescribed limits established by Bright House and CTIS, and that the damage inspections were generally not an exercise of discretion or independent judgment.

The undisputed facts allow a jury to reasonably find that Plaintiff has met some or none of the factors to be considered for the applicability of the third prong of the administrative exemption.  The jury could determine that Plaintiff's use of skill and experience in the performance of his primary duty and his limited leeway in decisions do not allow him to qualify under the administrative exemption. *Cotton v. HFS-USA, Inc.*, No. 8:08-cv-251-T-33TGW, 2009 WL 1396351 (M. D. Fla. May 18, 2009) (summary judgment order) (finding an employee who performed quality control inspections through comparison to standards and who assigned subcontractor work and repairs without direct supervision did not exercise discretion and independent judgment because most of his decisions were based on experience in the industry, well-established standards, and the use of common sense, and because he sought approval for

deviations from specifications and frequently spoke with his superiors). The motion for summary judgment is therefore denied. Accordingly, it is:

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. 18) be **DENIED**. This case will be set for a pre-trial conference and trial as soon as possible.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 16th day of June, 2009.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to all parties and counsels of record